MAULSBY v. CITIZENS BANKING COMPANY, EXECUTOR, ET AL.

[No. 10,359. Filed June 23, 1920.]

1. EXECUTORS AND ADMINISTRATORS.—*Proceedings to Sell Decedent's Realty.*—*Findings.*—*Sufficiency of Evidence.*—In a proceeding by an executor to sell decedent's land to pay debts, wherein the widow opposed the sale on the ground that the realty belonged to her under an antenuptial agreement, evidence *held* insufficient to sustain the trial court's finding that a note executed by decedent to the order of the widow was given to her in settlement of her interest in a part of the land covered by the antenuptial agreement subsequent to a sale of such part by decedent in his lifetime. p. 506.

2. EXECUTORS AND ADMINISTRATORS.—*Proceeds of Decedent's Personalty.*—*Application.*—*Payment of Liens.*—*Sale of Realty.*—The proceeds arising from the personal property of a decedent, after the payment of the costs and expenses of administration, should be applied in payment of the liens on the personalty and real estate, and no more real estate should be sold than will be sufficient to pay the liens on it. p. 507.

3. EXECUTORS AND ADMINISTRATORS.—*Sale of Land to Pay Debts.*—*Order of Sale.*—In ordering the real estate sold to pay debts on petition of the executor, that part not involved in an antenuptial agreement, and not involved in an item of the will giving the widow a life estate in certain lands, should be sold first, the land subject to the life estate, if necessary, next, and the land mentioned in the antenuptial agreement should be the last sold. p. 507.

From Randolph Circuit Court; *Theodore Shockney,* Judge.

Petition by the Citizens Banking Company, executor of the estate of Martin V. Maulsby, deceased, and others,

to sell decedent's real estate to pay debts, in which proceeding Malissa I. Maulsby, the widow, filed a cross-complaint. From a judgment for petitioners, the widow appeals. *Reversed.*

*O. N. Cranor, Jesse Canaday* and *J. S. Engle,* for appellant.

*Macy, Nichols, Bales & Parry,* for appellees.

McMahan, C. J.—Petition of appellee banking company, as executor of the estate of Martin V. Maulsby, to sell real estate to pay debts. Appellant, who is the widow of decedent, filed her cross-complaint, alleging an antenuptial agreement with decedent whereby she, upon the death of decedent, was to have certain described lands (eighty acres). That decedent in his lifetime had sold forty acres of said land and had mortgaged the other forty acres, and asking that her rights be protected. The court found the facts specially. Upon the facts as found, the court stated its conclusion of the law to be with the executor and that its petition to sell the real estate of the decedent should be granted and that it should be authorized to sell: (1) The real estate of which the decedent died seized, except that part involved in the antenuptial contract and the lots involved in item two of his will which he gave to the appellant for life; and if sufficient proceeds arise from the sale of said lands to pay the costs and expenses of the administration and the debts of said decedent, no more land shall be sold. (2) If the proceeds of the sale of said lands are not sufficient to pay said costs, expenses and debts, then the executor shall sell the remaining forty acres described in the antenuptial agreement, or so much thereof as may be necessary to pay said costs, expenses and debts. (3) If a sale of the land last described does not, with the proceeds of the sale of the other land and the personal property, produce

sufficient funds for that purpose, it shall then sell the land mentioned in item two of decedent's will subject to the life estate of appellant.

A decree was entered in accordance with these conclusions.

The court, after finding that decedent in 1906 had sold forty acres of the land described in the antenuptial agreement, that he had received in exchange therefor certain other land, and facts showing it to be necessary to sell all the land owned by him at the time of his death, found that as a settlement between decedent and appellant for the land so sold, which he had agreed in the antenuptial agreement should be the property of appellant, he executed and delivered to her a certain note for $1,500, which she accepted.

Appellant contends that this finding is not supported by the evidence. The evidence discloses that the antenuptial contract was entered into August 25, 1892, and was kept by the decedent's attorney, who drafted it, and was never seen by appellant after its execution until after decedent's death in 1916. In January, 1904, the decedent insured his life for $1,000 in favor of appellant. Before the maturity of said policy through some arrangement $855 was borrowed from the insurance company on this policy, and at its maturity in January, 1914, the further sum of $455.27 was paid on account of said policy, making a total of $1,310.27, all of which was turned over to decedent by appellant and used by him. On January 30, 1914, the decedent gave appellant the $1,500 note mentioned in the finding of facts, in which note the decedent stated that the consideration for the note was the money derived from an insurance policy upon his life which had matured and in which appellant was the beneficiary and which money had been used by him, and that the note was given as evidence of his liability to appellant on account of such money.

John Kendall, a justice of the peace, testified that he took the acknowledgment of a deed from decedent to appellant and according to his recollection this was in 1907, and that Mr. Maulsby made some statement to the effect that the "consideration of the deed was some life insurance or something of that kind." He also testified that in May, five years before the trial, which was in July, 1917, Mr. and Mrs. Maulsby came and executed some papers relative to a loan from some insurance company.

Appellant testified that the note for $1,500 was given her in consideration of the money received on the insurance policy in which she was the beneficiary and for a horse and cow which belonged to her; that she never saw the antenuptial agreement after it was signed in 1892 until after the death of her husband and did not know the description of the eighty acres which she was to get; that when the forty acres was conveyed she did not know that it was a part of the eighty acres mentioned in the antenuptial agreement; that she received no consideration for signing such deed or for signing the mortgage for the $9,000 to the insurance company. In answer to a question by the court she said: "When he (decedent) first suggested giving me this note was when he burned up some deeds he had made to me, the property in town. He made me a deed to procure some money on the life insurance policy he carried for ten years. He offered to give me the property for the life insurance money. After he got the money he said somebody had made a mistake in the deed. I knew enough to know that the deed ought to be recorded and I said, 'I would like to know about that deed,' and he said that 'it was no good and I burned it up,' and I said, 'You oughtn't to do a thing like that for that deed was mine,' and he said, 'John Kendall had made a

mistake in the deed and it was no good.'   After we had these conversations he proposed to give me this note."

Hanson Thompson, a son-in-law of the decedent, testified that a few days after the decedent was buried the will was produced and read.   In relating what took place at that time he said:   "Mrs. Maulsby brought out some boxes and papers and was looking through. them and found the will and I opened it and read it.   She says to me after it was read, 'It looks in that that I am not very well provided for,' and I said, 'No,' and then there was quietness for a little bit and she says, 'A few years ago Pa made me a deed to this Clear property and it ran on for some time and she discovered that it had never been recorded and she asked him about it and he said it didn't suit him and he destroyed it,' and she says, 'I made him give me a $1,500 note.'"

This note, according to the undisputed evidence, was given, not as a settlement for the forty acres Mr. Maulsby had sold and which according to the

1.   antenuptial agreement was to be the property of the appellant, but it was given in lieu of the deed by which he had undertaken to convey to appellant the property he had received in exchange for said forty acres he had sold and which deed he had destroyed. The consideration for this deed, according to the undisputed evidence, was the money derived from the insurance policy in which appellant was named as beneficiary. Having destroyed the deed, the decedent then executed the $1,500 note in which he positively stated that the consideration for such note was the insurance money. This is clearly established by the testimony of appellant, and corroborated by the testimony of Hanson Thompson and by the statement of decedent in the note wherein he, as it would seem, in anticipation of some question being raised after his death as to the consideration of such note, and, speaking from the grave as it

were, tells us that this note was given to the appellant as evidence of his indebtedness to her on account of the insurance money which belonged to her and which he had used. There is not a scintilla of evidence to show that the deed which had been destroyed or that the $1,500 note had anything whatever to do with the sale of the forty acres mentioned in the antenuptial agreement. The finding of the court with reference to the consideration for said note is not sustained by the evidence. It was therefore error to overrule the motion for new trial. Appellant excepted to the conclusion of law as stated by the court.

Appellant correctly contends that the proceeds arising from the personal property, after the payment of the costs and expenses of administration, should

2. be applied in payment of the liens on the personalty and real estate, and that no more real estate should be sold than will be sufficient to pay

3. the liens on the real estate. In ordering the real estate sold, that part not involved in the antenuptial agreement and not involved in item two of the last will and testament, which gave appellant a life estate in certain lands, should be sold first. The land in which appellant has a life estate, if necessary, should be sold next, subject however, to the life estate of appellant. The forty acres mentioned in the antenuptial agreement should be the last sold.

Judgment reversed, with directions to sustain appellant's motion for a new trial and for further proceedings not inconsistent with this opinion.

Nichols, J., not participating.